ELTON TREADWAY, by PARALEE TREADWAY, His Next Friend, v. UNITED RAILWAYS COMPANY OF ST. LOUIS, Appellant.

Division One, July 31, 1923.

1. **NEGLIGENCE: Humanitarian Rule: Collision With Automobile: Stopping Street Car.** Testimony by the motorman that the street car was slowed down to about two or three miles an hour just as the automobile started to back towards the track; that the automobile was standing still when he first saw it and began to slow up, and was then about ten feet from the track; that the street car was then fifty or more feet from the automobile; that its brakes had been set, but were released when he saw the automobile standing still; that the street car could have been stopped with the brakes in fifty or sixty feet; and the testimony of others that the automobile backed towards the track at a speed of about a mile an hour; and that as it backed around, the empty street car was seen and heard by them some distance away, is not

Treadway v. United Railways Company.

sufficient to enable the court to say, as a matter of law, that the humanitarian doctrine, made an issue by the pleadings, can be eliminated from the case, or that there was no showing that the street car could have been stopped in time to avert the collision after the perilous situation of the automobile became or should have become apparent to the motorman.

2. ————: **Excessive Speed: Sounding Gong.** Substantial testimony that the speed of the street car was from thirty-five to forty miles an hour, on a down-grade, before reaching the street crossing, and twenty-five miles immediately after the collision, that it ran two hundred feet after striking the automobile, and that no gong was sounded, is sufficient to compel a submission to the jury of the question that defendant was guilty of negligence in approaching the crossing at an excessive rate of speed.

3. ————: **Contributory: Imputed: Guest: Assumption of Fact.** Negligence of the driver of an automobile is not imputable to a mere guest riding therein, and in this case the evidence clearly establishes, without contradiction, that deceased was the guest of the driver, and therefore the question whether he was guilty of contributory negligence was properly submitted to the jury, and the instruction did not err in assuming that the negligence of the driver was not imputable to deceased.

4. ————: ————: ————: ————: **Instruction: Concurrent.** An instruction telling the jury that the negligence of the driver of the automobile may not be imputed to his guest, the deceased, and that you are therefore instructed that even if you find that the driver was negligent in the operation of said automobile, and that the collision was due to his negligence, "that fact alone will not warrant a verdict for the defendant," does not tell the jury that they cannot find for defendant even though there was no negligence of defendant concurring with the driver's negligence to produce the injury; especially, in view of other instructions given, clear and unmistakable, that deceased's suggested contributory negligence could not be construed to apply solely to an assumed negligence on the part of the driver, but must apply also and primarily to the alleged negligence of defendant.

5. ————: **Penalty: Instruction for Damages.** The sum recoverable under the statute (Sec. 4217, R. S. 1919) for the negligent killing of another by a corporation is a penalty, and while it may be in lieu of compensation and may incidentally afford the same relief it is nevertheless unqualifiedly penalty and is to be assessed as penalty; and therefore an instruction telling the jury that if they find the issues for plaintiff they will assess his damages at such

sum as will compensate him for the injury resulting to him by reason of his father's death, is erroneous, in that (1) it directs them to assess damages in favor of plaintiff, whereas the statute enjoins on them the duty to assess a penalty against defendant, and (2) it directs them to assess plaintiff's recovery at a sum that will compensate him for his pecuniary loss, whereas they should be left free to assess the penalty at a smaller amount if in the exercise of their discretion they see fit to do so.

Appeal from St. Louis County Circuit Court.—*Hon. G. A. Wurdeman*, Judge.

REVERSED AND REMANDED.

*Charles W. Bates, T. E. Francis* and *A. E. L. Gardner* for appellant.

(1) The court erred in refusing to give the jury the peremptory instruction to find for defendant, for the reason that plaintiff was not entitled to recover under any theory of negligence counted on in his petition. (a) Plaintiff was not entitled to recover under the last-chance doctrine, because there was no proof as to the relative positions of the automobile and the street car at any time, and no showing as to the distance within which the street car could have been stopped, after the perilous situation of the automobile became, or should have become, apparent to the motorman, and, therefore, the evidence was not sufficient to warrant a finding that the street car could have been stopped in time to have averted the collision after the automobile entered the "danger zone." Alexander v. Railroad, 233 S. W. 49; Burge v. Railroad, 244 Mo. 96; Fleming v. Railroad, 263 Mo. 189; Keele v. Railroad, 258 Mo. 79; Paul v. Railroad, 152 Mo. App. 583; Zurfluh v. Peoples Ry. Co., 46 Mo. App. 636; Baecker v. Railroad, 240 Mo. 521; Hamilton v. Railroad, 250 Mo. 722; McGee v. Railroad, 214 Mo. 541; Roenfeldt v. Railroad, 180 Mo. 568. (b) Plaintiff was not entitled to recover under the negligent speed theory for the reason that this accident occurred at an "ordinary and

usual country crossing," where there was no limitation
as to speed. Burge v. Railroad, 244 Mo. 102. (c) The
evidence tending to show that the car was operated at a
speed of thirty or thirty-five miles an hour and that the
gong was not sounded, did not warrant a recovery by
plaintiff, for the reason that these alleged derelictions
were not the proximate causes of the collision, and hence
were not actionable, since the evidence does not disclose
where the car was when the automobile was driven upon
the track or so near to it as to evidence a present inten-
tion of the driver to go upon it, and hence, for aught
that appears, it may have been driven upon the track
immediately in front of the street car. Moore v. Rail-
road, 176 Mo. 544; Battles v. Railroad, 178 Mo. App.
613; Jackson v. Railroad, 157 Mo. 645. Negligence not
proximately causing the injury complained of is not
actionable. State ex rel. v. Ellison, 176 S. W. 13; Jack-
son v. Butler, 249 Mo. 365. (d) The contributory neg-
ligence of decedent, in permitting himself to be driven
backward in the automobile, paralleling the track and
then turning and driving upon it, when, while travelling
in this manner for a distance of over thirty feet, he saw,
or by the exercise of ordinary care could have seen, that
the driver was not looking to see whether or not a car
was approaching, bars a recovery by plaintiff on every
theory of primary negligence. Alexander v. Railroad,
233 S. W. 48; Burge v. Railroad, 244 Mo. 94; Gubernick
v. Railroad, 217 S. W. 35; McCreery v. Railroad, 221
Mo. 31; Owens v. Railroad, 188 Mo. App. 454; Sanguin-
ette v. Railroad, 196 Mo. 466, 491; Hayden v. Railroad,
124 Mo. 571; Huggart v. Railroad, 134 Mo. 673; Kelsay
v. Railroad, 129 Mo. 372; Costello v. Railroad, 213 S. W.
180; Voelker Products Co. v. Railroad, 185 Mo. App.
317; Tannehill v. Railroad, 279 Mo. 158; Boring v. Rail-
road, 194 Mo. 548; Dyrcz v. Railroad, 238 Mo. 46; Keele
v. Railroad, 258 Mo. 80; Walker v. Railroad, 193 Mo.
480; Peters v. Lusk, 200 Mo. App. 381; State ex rel. v.
Reynolds, 214 S. W. 121. It is contributory negligence

as a matter of law for a passenger in a vehicle to permit himself to be driven upon the track, when he sees, or by the exercise of ordinary care can see, that the driver is not looking for approaching cars. Fechley v. Railroad, 119 Mo. App. 358; Leapard v. Railroad, 214 S. W. 268; Tannehill v. Railroad, 279 Mo. 169. (2) The court erred in giving the jury plaintiff's Instruction 1, for the reason that it permitted a recovery by plaintiff even though the collision between defendant's street car and the automobile in which plaintiff's decedent was riding was "due to the negligence of the driver of the automobile." Tannehill v. Railroad, 279 Mo. 171; Krehmeyer v. Transit Co., 220 Mo. 655. Instructions which permit a recovery upon a finding that defendant's negligence merely "contributed" to cause plaintiff's injury are erroneous. Hof v. Transit Co., 213 Mo. 467; Krehmeyer v. Transit Co., 220 Mo. 639. This instruction permitted a recovery by plaintiff although defendant was not even remotely negligent. The instruction directed the jury that they should not find for defendant (conversely, that they could find for plaintiff), even though they found that the collision was "due to the negligence of the driver of the automobile"—that is to say, even though defendant was not negligent. (3) The court erred in giving the jury plaintiff's Instruction 2, defining the measure of damages, for the reason that it permitted a recovery for compensatory damages, when the Wrongful Death Statute, under which the action was brought (Sec. 4217, R. S. 1919), imposes a penalty, and does not authorize an award of compensatory damages. Grier v. Railroad, 228 S. W. 454. The jury were not instructed that, in assessing the penalty, they could take into consideration the pecuniary injury to plaintiff, but they were directed to award plaintiff damages to compensate him for the financial loss sustained by him as the result of the death of his decedent.

*Arthur V. Lashly* for respondent.

(1) The demurrer to the evidence was properly overruled. (a) The defendant was negligent in the

operation of the car under the humanitarian rule and by excessive speed and failure to give a signal of the approach of the car. (b) If the issue of contributory negligence was in the case at all it was for the jury. Martin v. Rys. Co., 204 S. W. 589; King v. Rys. Co., 204 S. W. 1129; Kamoss v. Rys. Co., 202 S. W. 434; Lilly v. Rys. Co., 209 S. W. 969; Draper v. Rys. Co., 203 S. W. 646; Strauchon v. Met. St. Ry. Co., 232 Mo. 587; Ziegler v. Rys. Co., 220 S. W. 1016. (2) The defendant's instructions were explicit on the question of the contributory negligence of the plaintiff's decedent and in the light of those instructions plaintiff's instruction number one was not error, or if error, did not affect the merits, and was harmless. (3) This action is under Secs. 4217 and 4218, R. S. 1919 (Secs. 5425, 5426, R. S. 1909) and plaintiff's Instruction two properly declares the measure of damages. The defendant cannot complain if plaintiff in its instruction assumed a greater burden than the statute imposed upon him. McPherson v. Railroad, 97 Mo. 253; Goss v. Railroad, 50 Mo. App. 614; Sipple v. Gas Co., 125 Mo. App. 81; Ellingson v. Railroad, 60 Mo. App. 679. (b) The petition asks for general damages not as a penalty and this with the instructions fixes the character of the suit. Johnson v. Ry. Co., 270 Mo. 418; Powell v. Railroad, 255 Mo. 420.

RAGLAND, J.—An opinion in this case was prepared by one of our commissioners, to which in its entirety we were unable to agree. His statement of facts and his conclusions of law in part, however, have our concurrence and we adopt them, as follows:

"This case, on appeal from the Circuit Court of St. Louis County, submitted at the October term, 1921, has been reassigned for consideration and decision.

"The plaintiff, aged eleven years, by his next friend brought this suit against defendant to recover damages for the death of his father, Marion Treadway, who was killed as the result of a work car of defendant striking an automobile in which Marion Treadway was riding,

and which was being driven at the time by William Treadway. Marion Treadway was fifty-four years old, and William Treadway his son, a half-brother of plaintiff, was a grown man. The accident occurred at about nine o'clock on the morning of January 12, 1919, and at the crossing of defendant's tracks and Page Avenue, St. Louis County. Page Avenue extends east and west and is about fifty feet in width, and defendant's two tracks extending north and south cross it at right angles. At the southwest corner of the crossing space is a building fronting north on Page Avenue, and extending back south about one hundred feet. Extending north and south along the east side of this building is an open space or driveway twenty to twenty-five feet wide, between the building and the tracks of defendant. William Treadway lived in this building; and the outer door of his quarters was about seventy feet south of Page Avenue. At the time in question Marion Treadway, who lived at Graniteville, Missouri, was visiting William for a few days. On that morning William Treadway intended to drive to Clayton in his automobile, and Marion Treadway was going with him.

"At the time of starting, the automobile stood on the driveway, headed south, in front of William Treadway's store, and they entered the car, which was a Maxwell, at that point. William Treadway took the driver's place, and Marion Treadway sat at his right, in the front seat. The automobile top was closed, except that the front curtains were raised or pushed back. William Treadway had artificial limbs (feet and lower legs presumably), but for several years had been driving an automobile. He backed the automobile north along the driveway, to the south line of Page Avenue. There he stopped the automobile, still headed south and standing about six or eight feet west of the rail of defendant's west track. He looked out and back north down defendant's track. He could see northward, for a distance of about three-fourths of a block, but saw nothing and heard

nothing of an approaching car. He asked Marion Tread-way who also looked if he saw anything, who replied that he did not. He then backed the automobile slowly into Page Avenue northward and eastward in a curve, a distance between twenty and thirty feet, and brought it to a stop, headed west, at a point not far from the middle of Page Avenue, and where the hind wheels of the automobile were standing in about the center of defendant's west track. At this point the automobile was struck by a large cinder car of defendant, moving south on defendant's west track. A cross piece or bolster of the cinder car struck the automobile near the middle, and on its north side, the side on which Marion Treadway was sitting. William Treadway, the driver, says that as he was stopping and shifting the gear, he heard and saw the cinder car coming fifteen or twenty feet away. He cried out to his father, "Look out." Before the automobile moved, or moved sufficiently, it was struck by the cinder car, and Marion Treadway received the injuries which resulted in his death. Other features and incidents will be mentioned later as occasion requires.

"The plaintiff charged negligence against defendant, in that defendant, without using any care to give warning of the approach of said work car to the crossing, or care to watch out for vehicles or persons, or care to slow up or stop said work car to avert injury to Marion Treadway, caused and suffered said car to strike and injure him, whereof he died. The petition further amplifying the charge of negligence alleged that defendant and its employees failed to stop said work car when they either knew, or by the exercise of ordinary care would have known in time, by the exercise of ordinary care, to prevent the injuries and death of said Marion Treadway; that he was then and there in a place of danger; that defendant negligently failed to sound any bell, gong, or other means of warning to persons about to come on the tracks at said crossing, or to keep vigilant watch for persons or vehicles on the track or moving toward it,

and failed to stop said car within the shortest time and space possible and thereby avert the collision, and also that defendant negligently operated said car at a high and dangerous rate of speed. The amount sued for was ten thousand dollars.

"The defendant after a general denial, averred that said Marion Treadway's injuries and death were the result of his own negligence in that the automobile in which he was seated was being operated by William Treadway, who, on account of his physical condition, was not able or competent to operate it, all of which said Marion Treadway well knew; that Marion Treadway negligently permitted said William Treadway to back said automobile suddenly and without warning upon defendant's tracks and so close to an on-coming car that said car could not be stopped in time to avert a collision; that Marion Treadway negligently permitted William Treadway so to operate said automobile, when he, Marion Treadway, knew or by the exercise of ordinary care would have seen or heard the on-coming car in time to have stopped the automobile and avoided injury; that Marion Treadway negligently failed to either look or to listen before permitting the automobile to back on to the tracks, when by the exercise of ordinary care for his own safety by looking, he could have seen said car, or listening heard it, in time to have stopped the automobile and prevented said collision.

"At the close of plaintiff's evidence and at the close of the case, defendant asked for a peremptory instruction, which the court refused to give. Upon this it is urged here that plaintiff was not entitled to recover under any theory of negligence counted on in his petition, and the contentions are: (a) That plaintiff was not entitled to recover under the last-chance doctrine, because there was no proof as to the relative positions of the automobile and the street car, and no showing that the car could have been stopped in time; (b) that plaintiff was not entitled to recover under the negligent-speed theory

for the reason that the accident occurred at an 'ordinary and usual county crossing' where there was no limitation as to speed; (c) that the evidence tending to show the car was being operated at a speed of thirty or thirty-five miles an hour and that the gong was not sounded, did not warrant a recovery by plaintiff, for the reason these alleged derelictions were not proximate causes of the collision, since, it is urged, the evidence did not disclose where the car was when the automobile was being driven on the tracks; (d) that the contributory negligence of Marion Treadway in permitting himself to be driven backward onto the track, when he saw or by the exercise of ordinary care should have seen that the driver was not looking, bars a recovery by plaintiff.

"I.   It is earnestly insisted there is no showing that the car could have been stopped in time to avert a collision after the perilous situation of the automobile became or should have become apparent to the motorman. The motorman testified at length as to the relative positions of the car and of the automobile. This appears from the following:

**Perilous Situation.**

" 'Q.  Tell the jury how this accident occurred and what you saw of it.  A.  Well I was going south on the Creve Coeur Line to Page Avenue and when I was coming towards Page Avenue I slowed down at the stop there, slowed down to about two or three miles an hour and just as I started up on the crossing the automobile backed in.

" 'Q.  Where did it back from?  A.  It backed from the store there; when I seen the automobile he was standing still in the alley and I slowed up for Page Avenue.

" 'Q.  He was standing still where?  A.  Right in the alley, alongside of the store.

" 'Q.  He was not near the tracks?  A.  No, sir he was about ten feet from the tracks.

" 'Q.  In this alleyway?  A.  Yes, sir.

" 'Q.  Now, that runs parallel with the tracks? A.  Yes, sir.'

"And later on cross-examination he testified:

" 'Q.   Now, how far were you from the crossings at Page Avenue when you first saw this automobile standing at the entrance or at the junction of the alley with Page Avenue? A.   I was about fifteen feet from Page Avenue.

" 'Q.   About fifteen feet from Page Avenue? A. Yes, sir.

" 'Q.   Going from two to three miles an hour, you testified? A.   Yes, sir.

" 'Q.   With your brakes set; is that right? A. Yes, sir; I had already let off my brakes across the crossing—started to go across when he backed in.

" 'Q.   Had you had your brakes released at the time you first saw him? A.   No, sir.

" 'Q.   The brakes, when you first saw him, were set? A.   Yes, sir; they were set; he was standing still.

" 'Q.   You had a plain view of him? A.   Yes, sir.

" 'Q.   And he was at the entrance of the alley to Page Avenue? A.   Yes, sir.

" 'Q.   That is on the south line of Page Avenue? A.   Yes, sir.'

"William Treadway, the driver of the automobile, testified that he backed the car slowly into Page Avenue northward and curving eastward until the hind wheels were on the defendant's west tracks and the automobile was facing west; that in doing so it moved at a speed of about one mile an hour.

"Edwin Schmidt a witness who stood over on the east side of defendant's tracks on Page Avenue and saw the automobile being backed toward the tracks, testified that it moved slowly.   This witness also, at the same time the automobile was backing around, heard and saw the car some distance away coming down the track.   An employee of defendant who was on the front end of the car with the motorman testified that the motorman slowed down on the Page Avenue crossing; that he did not see the automobile on the driveway and first saw it 'moving

at pretty good speed' backward from the west into the car. The testimony of this witness and of the motorman was that the point where the car struck the automobile was south of the center line of Page Avenue. The testimony of the motorman was that going at a speed of two or three miles an hour on that grade he could with the brake stop the car in 'about fifty or sixty feet.' The car was a large and empty cinder car. The humanitarian doctrine was made an issue by the pleadings. We· cannot say as a matter of law under the evidence in this record that the doctrine can be eliminated in this case. Its application here involved an issue of fact properly left to the jury, and the conclusion reached in Burge v. Wabash Ry., 244 Mo. 76; Alexander v. St. Louis-San Francisco Ry., 233 S. W. 44, 49, and other cases cited by appellant, are upon facts materially different from those here shown.

"II.   The accident did not occur within the limits of a city, and no ordinance or regulation is shown limiting the speed at which this car or others at that place might be operated. There is very strong evidence in the record to show that the car was being run at a high rate of speed, at thirty or thirty-five miles an hour. A physician who saw the car as it passed Madison Avenue, which is two blocks north of Page Avenue, and who testified that he was familiar with the rate of speed of moving vehicles, said that it was then going thirty-five to forty miles an hour, and that there is a down grade from Madison Avenue to Page Avenue and further. The witness who stood on the east side of defendant's tracks at Page Avenue, and who testified he was acquainted with the speed of vehicles, estimated that the car as it approached Page Avenue was running at a speed between thirty-five and forty miles an hour. A witness who lived in the building at a point seventy feet south of the line of Page Avenue testified that, when he heard the crash of the collision, he looked out and saw the car passing; the motorman

*Excessive Speed.*

was putting on the brakes; fire was flying from its wheels, and it was going then 'anyhow twenty-five miles an hour.' This witness testified the car ran on two hundred feet beyond the point of collision; the motorman said one hundred feet, and his companion said one hundred and forty feet beyond. There was some other testimony to the effect that the car was moving fast as it approached Page Avenue, and did not slow down for the crossing. There were three men on the car, one of them was at the back end, and did not testify at all as to the speed. The testimony of the motorman that he was running at two or three miles an hour has been set forth. His companion on the front end of the car gave no estimate of the speed, but testified that they slowed down; referring to the motorman, he said: 'He always slowed down, and he slowed down on the Page Avenue crossing; he slowed down and then he started on; he started on across, put on three or four points of power and started on across, and as he started on across here came the automobile backing out from the west. He backed out from the west, out backward, and he came into our car backward; and both cars were approaching together, and this automobile run right into the front corner, the right hand corner of our car.'

"The motorman had been running the kind of car here under consideration on this line for eighteen years, and said he had gone along the place where the accident occurred a thousand times. He stated there was a fairly steep down grade for half a mile extending back of and beyond Page Avenue. He stated this car would not run thirty-five miles an hour, and that a man would be 'very foolish to run thirty-five miles an hour coming into Page Avenue crossing.' He testified that on this particular day he was 'coasting' in approaching Page Avenue. There is no claim that he sounded the gong upon approaching Page Avenue, and there is positive testimony that he did not. His testimony was that the car made less noise when it was coasting than it did when the power was on. If, as the motorman stated, he was coast-

ing at two or three miles an hour, and saw the automobile standing at the intersection of the driveway and the south line of Page Avenue, six or eight feet from the west track, and he then turned on the power, he did not before or at the time of doing so, sound his gong. If, on the other hand, he was approaching the crossing at a speed of thirty miles an hour, which seems more probable from the testimony, he was approaching at a speed of forty-four feet a second, and yet did not sound any warning of the approach of the car. In view of all this, defendant's contention that these derelictions were not actionable as not being proximate causes of the collision cannot be allowed as matter of law. They were matters properly left to the jury.

"III.   It is further insisted that Marion Treadway was himself guilty of such contributory negligence in permitting himself to be driven backward in the manner it was done by the driver, as bars a recovery by plaintiff on every theory of primary negligence. As has been heretofore stated, the particular purpose for which William Treadway was driving to Clayton, and for which Marion Treadway was going with him, is not disclosed by the record. William Treadway was partner in a store located in the building that has been described, and lived in the same building. He kept his automobile at a garage, located about one hundred feet or more south of this store, and reached by way of the driveway that has been described. Marion Treadway lived at Graniteville, Missouri, about one hundred miles away. He had been engaged formerly in railroad work, but at this time was engaged in farming.

"A few days prior to the accident William Treadway had driven to Graniteville, and upon his return home Marion Treadway came with him and was visiting him. On the morning in question, which was on Sunday, William Treadway backed his automobile up from the garage to the front of his store before starting to Clay-

*Contributory Negligence.*

ton.   While the automobile was thus standing, a car, spoken of as the 'five-to-nine' car, passed north on defendant's east track.

"William Treadway and Marion Treadway entered the automobile from the store.   William Treadway's statement is that his father came out of the store to go with him to Clayton.   William Treadway backed the automobile north to where the driveway entered Page Avenue and stopped it.   He was on the left or east side of the automobile next to defendant's tracks, and Marion Treadway on his right, and next to Page Avenue extending west from that point.   William Treadway put his head out on the east side and looked north and south. He saw and heard nothing of an approaching car.   He asked his father if he saw anything, and Marion Treadway answered that he did not.   William Treadway then backed the car from where it stood, near the south line of Page Avenue and parallel with and six or eight feet west of defendant's west track, northward into Page Avenue, and eastward, until it came to a stand with the hind wheels over the west rail of defendant's west track, and facing west, where the collision occurred.   The distance involved in this curve linear movement is not definitely fixed.   It did not exceed thirty feet, and was not less than twenty feet.   To what particular point the attention of Marion Treadway was directed, it is impossible to determine with certainty.   But William Treadway, from his position, naturally looked and did look from the east side, north and south, along defendant's tracks, while Marion Treadway, from his position, most probably looked on that part of Page Avenue adjacent to the automobile, since before backing into the avenue it was necessary to look both ways.   There is nothing to show what looking, if any, was done by either of them while the automobile was making the short curve backwards into the street and on the track.

"The negligence here under consideration under defendant's contention is that of Marion Treadway, which it is asserted was such as to bar a recovery by plaintiff.

The facts in this case do not bring it within the rule or conclusions stated in Fechley v. Springfield Traction Co., 119 Mo. App. 358; Leapard v. Railroad, 214 S. W. 268; and Tannehill v. Railroad, 279 Mo. 158, and other cases cited by appellant, defining the duty which may rest upon one who rides in a vehicle driven by another. There is nothing in the evidence to suggest that the two men were engaged in a joint enterprise. The clear inference to be drawn is that it was William Treadway who was the principal in going to Clayton, and that Marion Treadway, his temporary visitor living at a place remote, was going along as a guest only.

"William Treadway lived and had his place of business at a point not more than one hundred feet from where the accident occurred, and was accustomed, and necessarily was known by Marion Treadway to be in the habit of driving his automobile out of the driveway, and thence turning into Page Avenue in one of the directions available. The issue as to contributory negligence on the part of Marion Treadway was properly left to the jury. This was done by the trial court, and the instructions on that phase of the case are to be considered.

"The court at the request of plaintiff gave one instruction upon the primary issue in the case, and gave three instructions for defendant on that issue. The instruction for plaintiff is as follows:

" 'The court instructs the jury that the negligence of the driver of the automobile mentioned in the evidence, if any, may not be imputed to the deceased, Marion Treadway, and you are, therefore, instructed that even if you should find that the driver of said automobile was negligent in the operation of said automobile, and that the collision of the defendant's car with said automobile was due to the negligence of the driver of said automobile, that fact alone will not warrant a verdict for the defendant.'

"The instructions for defendant are as follows:

" '3.    The court instructs the jury that the motorman had a right to presume that the automobile described in the evidence would not move from a position of safety into one of danger upon defendant's tracks; and you are further instructed there was no duty upon the motorman in charge of the cinder car to stop said car until he saw, or in the exercise of ordinary care would have seen, said automobile approaching said tracks in such a manner and under such circumstances as in the exercise of ordinary care said motorman would have known that said automobile would move into a position of peril on or near the tracks of defendant and into a position where it might be hit by the oncoming car.

" 'You are, therefore, instructed that if you find and believe from all the evidence in the case that when said automobile was first seen by said motorman it was not in motion and that said automobile did not begin to move towards the track until the on-coming car was so close to same that in the exercise of ordinary care under the circumstances said car could not be stopped by said motorman in charge of same with the appliance at hand to stop same in time to have avoided collision with said automobile, then the plaintiff is not entitled to recovery in this case and your verdict must be in favor of the defendant.'

" '4.    The court instructs the jury that it was the duty of Marion Treadway, deceased, before going upon defendant's track on Page Avenue to have looked and listened for an approaching car, and if you find from all the evidence that the said Marion Treadway failed to look and listen when by looking and listening he could have seen said approaching car in time to have avoided colliding with same, and that his negligence, if any, in this regard contributed, to cause the injuries suffered by him, then plaintiff is not entitled to recover and you must find for the defendant.

" '5.    The court instructs the jury that if you find and believe from all the evidence in the case that Marion Treadway, deceased, saw the cinder car approaching

Page Avenue in time to have warned William Treadway, the driver of the automobile described in the evidence, and you further find that by giving said warning the collision would not have occurred, and you further find that said Marion Treadway, deceased, failed to give said warning, and that such negligence, if any, in that regard contributed to the slightest extent to cause the injuries which resulted in his death, then the plaintiff in this case is not entitled to recover and your verdict must be for the defendant.'

"IV. The defendant complains of instruction numbered one for plaintiff upon two grounds. It is urged that the statement of the rule of imputed negligence in the first clause is too broad, under the facts in this case.
<span>Imputed</span> The evidence as to the relation existing be
<span>Negligence.</span> tween Marion Treadway and William Treadway has been stated in considering defendant's demurrer to the evidence. 'It is true, that by the great preponderance of authority the negligence of the driver of an automobile is not imputable *to a mere guest or to a passenger who is riding in the machine,* but who has no authority either over the machine or over the driver thereof.' [Tannehill v. Railway, 279 Mo. l. c. 170; Mahany v. K. C. Rys. Co., 228 S. W. 821; Moon v. St. Louis Transit Co., 237 Mo. l. c. 434.]

"In this case there is not a word of testimony in the record tending to show that the automobile was going upon an errand in which Marion Treadway was in any manner concerned on his own account. All of the evidence bearing in any way upon the circumstances of his going tend to show that he was going merely as a guest, with no control over the automobile or its driver, and with no personal interest in the trip to Clayton. There was, therefore, no evidence in the case requiring a qualification or modification of the rule as stated above.

"Further objection is made to plaintiff's instruction numbered one, in that it told the jury that if the driver was negligent, and the collision was due to the negligence

of the driver, that fact alone would not warrant a verdict for defendant. The objection to this is, in substance, that it told the jury that they could not find for defendant even though there was no negligence of defendant concurring with the driver's negligence to produce the collision. But, it is not perceived how the jury could have so understood it, under the facts in the case and in connection with the other instructions given. The action was based upon several alleged negligent acts of defendant. The evidence as to these was before the jury. Defendant's instruction numbered 4 told the jury that it was the duty of Marion Treadway to look and listen before going on the tracks; that if he failed to do so, when by so doing he could have seen the approaching car in time to avoid the injury, he was negligent, and that if his such negligence contributed to cause the injuries, the finding must be for the defendant. And defendant's instruction numbered 5 told the jury that if Marion Treadway saw the cinder car approaching in time to have warned the driver so as to avoid the collision, and failed to give such warning to the driver, such failure was negligence, and if his such negligence in that regard contributed in the slightest extent to cause his injuries, then the verdict must be for the defendant.

"The jury was bound to understand that their consideration of the suggested negligence of Marion Treadway as contributing to his injury, was an inquiry whether there was in fact a co-existence and connection of negligence on his part, with negligence on the part of the defendant. Instructions four and five thus imposed upon Marion Treadway the duty to look and to listen, and if he saw the car approaching warn the driver; and imposed upon him the burden of bearing his injuries if he failed to look and listen, or to warn, if his failure in either regard contributed in the slightest degree to cause his injuries. Manifestly, his suggested contributory negligence could not be construed to apply solely to an assumed negligence on the part of the driver, but must apply also and primarily to the alleged negligence of the

defendant. This is so, because these instructions re-
quested by the defendant did not make any requirement
of finding that Marion Treadway *knew, or should have
known, that the driver was negligent or remiss in his
duty* to guard against danger. These instructions given
for defendant were but responsive, under defendant's
theory, to plaintiff's instruction numbered one.

"No instructions were asked defining the alleged acts
of negligence of defendant. The case was submitted to
the jury upon the alleged acts of negligence of the de-
fendant, set out in the petition and dealt with in the evi-
dence, upon the theory that the negligence of the driver
was not imputed to Marion Treadway, but, that Marion
Treadway was himself under the duty of exercising
due care in looking and listening, and in the consequent
warning of the driver; and this was supplemented by
defendant's instruction numbered 3, which defined de-
fendant's rights in the operation of said car, and its
duties under the humanitarian doctrine.

"Defendant urges that by these instructions the jury
was authorized to find for plaintiff though defendant
was not even remotely negligent, or, if the negligence of
defendant merely contributed to cause the injury. The
cases of Hof v. Transit Co., 213 Mo. 445, 464, and Kreh-
meyer v. Transit Co., 220 Mo. 639, 670, are cited in that
connection. In the Hof Case an instruction was con-
demned which in terms authorized a verdict against de-
fendant if defendant's negligence contributed to cause
the injuries. In this case the direction is the other way.
The direction is for a verdict in favor of defendant if
Marion Treadway's negligence contributed to cause his
injuries. Nor does what is said in the Krehmeyer Case
militate against what has been said here. In the case at
bar the pleadings, the evidence and the instructions, rec-
ognize the concurrent presence and acts of three parties,
the defendant, the driver William Treadway, and the
passenger, Marion Treadway. Under the case as sub-
mitted there is no reason shown why their relative duties

and responsibilities were misunderstood by the jury. The contention of defendant in this regard is denied.

"V. There remains another assignment of error to be considered. The court gave for the plaintiff the following instruction.

" '2. The court instructs the jury if, under the evidence and the other instructions in this case, you find your verdict for plaintiff, then you will assess his damages at any sum, not exceeding ten thousand dollars, that you may deem fair and just, having reference to the necessary injury, 'if any, resulting to the plaintiff by reason of the death of his father, Marion Treadway, and you may take into consideration in estimating said damages, if any, the loss of the support and maintenance, from the time of the death of his father during the minority of plaintiff, and the loss of the care, nurture, guidance, mental, physical and moral training and education of plaintiff by his father during said period.' . . .

"It is urged that the instruction is erroneous under the provisions of Section 4217, Revised Statutes 1919, and the ruling of this court in banc, and Grier v. Kansas City, C. C. & St. J. Ry. Co., 228 S. W. 454, is cited."

This case was brought under what is now Section 4217, Revised Statutes 1919. The sum recoverable thereunder is *a penalty*. While it may be in lieu of compensation and may incidentally afford the same relief (McDaniel v. Hines, 239 S. W. 471), it is, notwithstanding, unqualifiedly penalty and is to be assessed as penalty. [Grier v. Railroad Co., 228 S. W. 454.] The instruction set out above told the jury in substance that if they found the issues for the plaintiff they should assess his damages at such sum as would compensate him for the injury resulting to him by reason of his father's death. The instruction was clearly erroneous. In the first place it involved a fundamental misconception of the considerations that should have governed the jury in determining the amount of the recovery, in that, it directed them to

assess *damages in favor of the plaintiff*, whereas, the duty enjoined upon them by the statute was to assess a *penalty against the defendant*. Plaintiff's cause of action was not for *damages*, but for *the penalty* accruing under the statute.

In the second place the instruction told the jury in effect that they must assess plaintiff's recovery at a sum that would compensate him for his pecuniary loss, whereas, they should have been left free to assess it at a smaller amount had they in the exercise of their discretion seen fit to do so. Plaintiff's pecuniary loss was in no sense the measure of his recovery. While his award under the facts of this case could reasonably have equaled or exceeded the amount that would compensate him for his pecuniary loss, it could just as reasonably have been fixed at a lesser sum, in the discretion of the jury. We held in Grier v. Railroad, supra, that the jury in assessing the penalty against the defendant for wrongful death under Section 4217 may properly take into consideration the pecuniary injury inflicted upon plaintiff. We so hold now. But such injury is but one fact to be considered with others, and the importance to be given it as a factor in determining the amount of the penalty should be left to the unfettered discretion of the jury.

For the reasons indicated the giving of plaintiff's instruction numbered 2 was reversible error. The judgment is accordingly reversed and the cause remanded for another trial. All concur; *James T. Blair, J.*, in paragraphs 1, 2, 3, 5, and the result.