JAMES L. GARRETT AND SARAH L. GARRETT, Respondents, v. MISSOURI PACIFIC RAILROAD COMPANY, Appellant.*

St. Louis Court of Appeals.  Opinion Filed November 5, 1924.

1. **RAILROADS: Negligence: Pedestrian: Killed at Crossing by Train: Failure to Ring Bell or Sound Whistle or Burn Headlights: Evidence: Question for the Jury.** In an action for damages brought by the parents of an unmarried minor son to recover from defendant railroad company the statutory penalty for causing the death of the son, evidence reviewed and *held* sufficient to go to the jury on the question as to whether deceased was killed by the train at a public crossing, whether the headlight was burning or bell rung or whistle sounded, and whether the deceased could have seen or heard the train had he looked and listened.

2. **DEATH BY WRONGFUL ACT: Pedestrian: Killed at Crossing by Train: Presumed to have Exercised Proper Care.** In the absence of proof to the contrary, a pedestrian killed by a train upon a public crossing will be presumed to have exercised proper care for his safety.

3. **RAILROADS: Negligence: Pedestrian: Killed by Train: Whether Deceased was on Public Crossing or Trespasser on Track: Evidence: Question for the Jury.** In an action by the parents to recover the

---

*(1) Railroads, 33 Cyc, p. 1099 (1926 Anno), pp. 1104, 1105, 1111; (2) Death, 17 C. J., Section 167; (3.) Railroads, 33 Cyc, p. 1099 (1926 Anno);

statutory penalty for causing the death of their son, killed by a train at a railroad crossing, evidence *held* sufficient, although there was no proof as to how the deceased got on to the track, to leave to the jury the question as to whether he was not at the time crossing the track over a public highway, or whether he was a trespasser.

4. DEATH BY WRONGFUL ACT: Damages: Aggravating Circumstances: Instructions: Instruction Authorizing Jury to Consider Aggravating Circumstances in Assessing Damages: Not Erroneous. Where there was evidence that the train which struck and killed deceased, was running at the rate of fifty-five miles an hour, on a stormy night, over a public crossing without a headlight, and without sounding a warning, *held* that an instruction submitting for the consideration of the jury, the question of aggravating circumstances in assessing damages in a suit under the penalty statute was not erroneous.

5. APPELLATE PRACTICE: Remarks of Counsel: Referring to Mangled Condition of Deceased's Body as Aggravating Circumstances in Assessing Damages: Objectionable but not Reversible Error in View of Verdict. Argument of counsel referring to the mangled condition of the body of a boy killed by a train, in connection with his argument of aggravating circumstances in the case, though objectionable, *held* not to work a reversal of the judgment, in view of all the facts and circumstances attendant, and the verdict of $3500, not excessive.

(4.) Death, 17 C. J., Section 167; (5.) Appeal & Error, 4 C. J., Section 2938.

## Appeal from Cape Girardeau Court of Common Pleas.— *Hon. John A. Snider*, Judge.

AFFIRMED.

*Jas. F. Green* and *J. C. Sheppard* for appellant.

(1) It was an error to admit the testimony of the witnesses that the headlight was not burning at the time it passed them one-half mile or more from the place of the accident, for the reason that there is no presumption that if the headlight was not burning then it was not burning at the time it passed the crossing, as

the burning or going out of the headlight is not a permanent thing. 22 C. J., page 87; 53rd National Bank v. McCrory, 191 Mo. App. 295, 177 S. W. 1058; Richardson v. Smart, 65 Mo. App. 14; Frye v. Railroad, 200 Mo. 407; Cincinnati, N. O. & T. P. Ry. v. No. Wharten, 262 S. W. 253. (2) The court should have given the demurrers to the evidence at the close of the plaintiff's case, and at the close of the whole case, for the reason that there was no evidence that the whistle was not sounded nor the bell rung when the engine was approaching the crossing. This evidence was all negative. Summerville v. Railroad, 29 Mo. App. 113; Quigley v. Traction Co., 180 Mo. App. 296; Williamson v. Railroad, 139 Mo. App. 481; Butler v. Railroad, 117 Mo. App. 354; Henze v. Railroad, 71 Mo. 636; Bennett v. Railroad, 122 Mo. App. 709; Sanders v. Railroad, 147 Mo. 411; Shaw v. Railroad, 104 Mo. 657. (3) The court should have sustained the demurrers to the evidence for the reason that though no whistle or bell sounded plaintiff's failure to take the track itself as a warning of danger, and to use his eyes and ears to discover and avoid the train is contributory negligence barring his recovery. Kelingsworth v. Railroad, 209 S. W. 301; Central Coal & Coke Co. v. Railroad, 215 S. W. 914; Whiteside v. Railroad, 186 Mo. App. 617-618. (4) It was not proper and was reversible error for the court to give respondent's instruction No. 4, permitting the jury to find punitive or exemplary damages for the reason that no such damages were asked for, no facts were pleaded warranting exemplary damages and there was no proof showing any facts warranting the allowance of punitive damages. The court further erred in refusing to rebuke counsel for respondent for asking for such damages in his argument. 17 C. J., 986, section 284; Leahy v. Davis, 121 Mo. 227; Franz v. Hilterbrand, 45 Mo. 121; Graham v. Railroad, 66 Mo. 536; Brown v. Cape Girardeau Macadamized Road Co., 89 Mo. 152; Parson v. Railroad, 94 Mo. 286; Monroe v. Railroad, 249 S. W. 644.

*Abington & Abington* for respondents.

(1) The cases cited by appellant under its first assignment of error are inapplicable to the facts of this case, for the reason that upon the part of plaintiffs, there was positive proof that an illuminated headlight was not maintained upon appellant's engine, at the time that said engine approached and passed over the crossing in question. This being true, there is absent any reason for dealing with presumption. Appellant's assignment of error is therefore not tenable and is without merit. (2) The question as to whether the whistle was sounded or the bell rung when the locomotive was approaching this crossing, was, under the proof, a question of fact for the jury, and defendant's instructions in the nature of demurrers to the evidence were by the court properly refused. Stotler v. Railroad, 200 Mo. 138; Johnson v. Railroad, 259 Mo. 548; Underwood v. Railroad, 182 Mo. App. 265; Turney v. Railroad, 155 Mo. App. 513; Killingsworth v. Railroad, 209 S. W. 301. (3) In the absence of proof to the contrary, a pedestrian killed by a train upon a public crossing, will be presumed prima facie to have been using ordinary or proper care for his safety. It requires a clear case to convict the dead (who have no notice of or chance to be heard at the trial) of contributory negligence as a matter of law. Jones v. Railroad, 220 S. W. 484; McDaniel v. Hines, 292 Mo. 402. Whether decedent, who was struck by a train operated without a headlight and crossing signals on a dark and stormy night, could have seen or heard the train had he looked or listened, was a question for the jury. Kerr v. Bush, 215 S. W. 393; Jones v. Railroad, 220 S. W. 484; Johnson v. Railroad, 259 Mo. 546; Beck v. Railroad, 102 Mo. 544. The record is silent in this case as to how deceased came upon this public crossing, but having been killed there upon the crossing, deceased was not a trespasser, and was entitled to the protection of the statutory signals and of the lighted headlight, and this, regard-

less of how he approached or came upon this crossing. Torrance v. Pryor, 210 S. W. 430; Kerr v. Bush, 215 S. W. 393; State ex rel. Bush v. Sturges, 281 Mo. 599. (4) Instruction number four as given by the court at the request of plaintiffs, and of which appellant complains, has been passed upon and approved by the courts of this State. Grier v. Railroad, 286 Mo. 523; Bloomcamp v. Railroad, 236 S. W. 388; Treadway v. Railroad, 253 S. W. 1037. The trial court heard all the testimony as well as the entire remarks of counsel. He was in a position to determine whether under the testimony such remarks were justified or proper. In view of the exceedingly low verdict it cannot be seriously contended that the remarks were prejudicial. Huckshoed v. Railroad, 90 Mo. 548.

DAUES, J.—This action is brought by plaintiffs, the parents of an unmarried minor son seventeen years of age, to recover from the railroad company the statutory penalty for causing the death of said son on June 7, 1923. The suit was instituted in Butler county, and upon application of defendant the venue was changed to the Cape Girardeau Court of Common Pleas in Cape Girardeau county. The trial resulted in a judgment in favor of plaintiffs for $3500, from which the defendant appeals.

The negligence charged in the petition, and upon which the case went to the jury, is that the defendant negligently and carelessly ran its train over this boy while he was on a public crossing, in the night time, and while running at a high and dangerous rate of speed without keeping the electric headlight on the locomotive lighted, and, secondly, in failing to give any signal of the approach of the train by sounding a whistle or ringing a bell eighty rods from the public crossing, as required by statute.

The answer is a general denial.

The defendant operates a railroad from within the State of Arkansas through Missouri to the city of St. Louis. The accident occurred at a public crossing at Neelyville, Butler county. This crossing is referred to as the Berry crossing. At this point the railroad runs north and south and the public road intersects same, running east and west. The lands on either side of the railroad are improved farms. However, on the east side of the right of way fence north and south of this crossing there is a small strip of wooded land.

It becomes of importance to note the location of the homes of two of the witnesses. It appears that slightly over a half mile south of this crossing, east of the railroad and within fifty or sixty feet of the right of way, is located the residence of Henry Kent, and witness John Roberts resides a mile and a half south of the crossing and a quarter of a mile east of the railroad. On June 6, 1923, the deceased and another boy of about the same age, one Grimes, had gone to the town of Neelyville, where they remained until midnight. A storm approached that vicinity, which was so severe as to arouse the entire neighborhood. The boys started home, and both were found dead the next morning at Berry crossing.

Defendant ran a train over this point after midnight of this day, which was a passenger train known as number six. It appears that the Berry crossing was reached by this train at 12:53 A. M., June 7, 1923, and was then running at a rate of speed of fifty-five miles an hour. When the train reached Popular Bluff, further north, by reason of a peculiar odor, the engineer and fireman were attracted to make an examination to see if they had not run over something, and found upon the pilot of the engine blood and tissue, indicating that they had struck some live creature. Another employee of defendant looked at the engine and saw blood and brain substance scattered upon it.

There is another dirt road besides the Berry road leading from Neelyville south, and east of the home of

young Garrett, and crosses the road running east and west over the Berry crossing a quarter of a mile east of the Berry crossing and between this crossing and the home of young Garrett. The bodies were discovered about 7 o'clock in the morning of June 7th by some small boys. Witnesses congregated, and several testified that they found that Garrett's head was practically decapitated and that his intestines and liver were torn from the body and strewn along the tracks north of the crossing. It is in evidence that the cattle guard and wing fence on the north of the railroad crossing at this point had been bespattered with blood and that tissue and brain matter had been thrown on the cattle guard and wing fence, and that teeth and parts of a skull were found near the north cattle guard. Just north of the crossing, and within a few feet south of the north cattle guard, were trails of blood, the body of the son of plaintiffs being found at that point. The body of the other boy was found on the east side of the track, between the railroad crossing sign and the body boards of the crossing. His head was entirely cut off and the body otherwise mangled.

Witness Kent, together with his wife, testifying for plaintiffs, stated that they were up, being fearful of the storm, and that they saw the train pass their door. They said they were so located that they could observe the passenger train as it passed their house and approached the crossing. Kent testified that he stood a few feet from the right of way fence and had before him an unobstructed view of the track to the Berry crossing. Mrs. Kent was standing on the porch, which was fifty or sixty feet from the right of way, and her view was also unobstructed, although she could not see up the track quite so far as could Kent. Each testified that when this train approached they were struck with the fact, and clearly observed, that it was a passenger train traveling at an unusual rate of speed with no illuminating headlight on the front of the locomotive;

that it was a dark, stormy night, and that they remarked to each other about the unusual occurrence, and then they watched the train as it passed. Kent says he saw the train until it passed over this crossing; that Mrs. Kent watched it for some distance up the track, but that the train was obstructed from her view before it actually arrived at the crossing. However, they both were very clear in their statements that when the train passed their house there was no light burning on the front of the locomotive. Kent, himself, testified that he watched the train until same reached the crossing. These questions and answers appear in his direct examination:

"Q. From the time that the train passed you, was there a reflection of a headlight at any time between when it passed you and when it passed over this road crossing? A. If there was I didn't see it.

"Q. Could you have seen it? A. Yes, absolutely could.

"Q. And you say there was not? A. There was not."

It is in evidence that the reflection from a headlight on this kind of a train can be seen from the side of the track for probably a mile and a half, and if in looking at the light it is on a straight line one can see same for five or six miles. It is also in evidence that one standing where Kent stood on this occasion could see the light thrown from the headlight of a passing train at least as far north as the Berry crossing.

Witness John Roberts testified that he saw the train about a half mile south of the crossing, and that the light was not then burning on same.

Witness Thomas Dowdy testified that the light was not burning when the train passed him a half mile south of the crossing.

The defendant produced the engineer, who stated that he sounded the signal crossing at the whistling post eighty rods south of Berry crossing, and the fireman, while not positively, in effect corroborated this. The wind was blowing from the north or northwest.

There was evidence for defendant that there is another dirt road leading south from Neelyville which the boys could, or, as defendant's counsel insist, might have taken, and thus it is argued it is inferable that the boys walked down the track instead of down the dirt road and that in that manner they came to be at the Berry crossing; that the boys therefore were trespassing on the track until they reached the public road crossing. The trainmen testified that the headlight was burning, and that the whistle and bell were sounded at the crossing. The evidence also shows that the headlights on a train occasionally go out and that it is a matter, usually, of a moment's time to light same.

Plaintiffs' witnesses, however, one after another, testified that they did not hear any sound or signal from whistle or bell from this locomotive on this occasion, and these witnesses, all having good hearing, probably were not in as good a position to hear such signal because of the wind coming from the northwest, yet they say they were close enough to hear the signal had a signal been sounded. Kent and his wife were south of the point where the whistle is to be sounded, and the wind was blowing from the northwest. Kent testified for plaintiff that had a signal been sounded, by bell or whistle, at this crossing he would have heard it, but that he heard no such warning. Likewise was the testimony of Mrs. Kent.

Witness Dowdy testified that he was about a half mile from the whistling post when the train passed, and that he was in a position to hear a signal had there been one sounded, but that he heard no such signal.

This very succinctly recites the proof most favorable to plaintiffs, and we must examine plaintiffs' evidence under such rule when considering the first assignment of error, to-wit, that the demurrer to the evidence should have been sustained.

We think the court correctly ruled the demurrer to the evidence. We have carefully considered the argu-

ment of counsel for defendant opposing this action, which is a very engaging and forceful presentation, but we cannot escape the view that a case was made for the jury though there was no positive evidence from the testimony of eyewitnesses that the train killed this boy. The circumstances are enough to warrant the inference that the boys were on the public road on their way home, though that may not have been the nearest and most direct route, and that they were still in the path of the public road when actually struck by the train. That their bodies were knocked northwardly cannot be doubted. They met a violent death by being struck by a passing train; there was a train along there at that time, and the evidence shows that defendant's engine did strike some live object. The proof that no headlight was burning on defendant's train at the crossing is very cogent. Witnesses, apparently disinterested, observed the unusual spectacle of a fast-flying passenger train traveling over the tracks within close proximity to the crossing without a headlight. While it is true that no one standing exactly at the point where the road and track meet saw that no light at that exact instant was burning, yet it must be remembered that this train was traveling at the rate of seventy-five feet per second, and that Kent and his wife observed that there was no light burning after it passed them and until the crossing was reached, nor could they see any light being diffused to the side after the train passed and at a time when it must have been at the crossing. The proof is almost as clear as it is possible to make it, under circumstances as this, of the failure to ring a bell or sound a whistle. Persons of good hearing, observing the train, testified that they did not hear any such signal. They were close enough, it seems, according to their testimony, to have heard such warning, even under the unfavorable weather conditions, had one been sounded. This leaves the case with the triers of the facts. The jury found against defendant and acted within their province, and so that matter must rest where we find it.

We must have in mind, too, in the absence of proof to the contrary that a pedestrian killed by a train upon a public crossing will be presumed to have exercised proper care for his safety. We cannot convict the dead of carelessness, as a matter of law, unless a clear case is made to convict the deceased of acting contrary to ordinary prudence. And whether this boy, being struck by a fast train which had no headlight burning and with no signals being blown, on a dark and violent night, could have seen or heard the train had he looked and listened was clearly a question for the jury. We think the evidence is sufficient, although there is no proof as to how the boys got onto the track, to leave to the jury the question as to whether this boy was not at the time crossing the track over a public highway or whether he was a trespasser. [Torrance v. Pryor, 210 S. W. 430; Kerr v. Bush, 215 S. W. 393; State ex rel. Bush v. Sturgis, 281 Mo. 591, 221 S. W. 91.]

The next question raised by defendant relates to plaintiffs' instruction number 4, which is as follows:

"The court instructs the jury, that if you find for plaintiffs then you should assess against the defendant as a penalty a sum not less than $2000, nor more than $10,000 in the discretion of the jury, and in determining the amount, you may take into consideration the facts constituting the negligence, if any, on the part of defendant, causing the death of said Samuel Bass Garrett, including the aggravating or mitigating crcumstances, if any, attending such negligence as is shown by the evidence."

The direct question is whether under the pleadings and the evidence the instruction with reference to the consideration of any aggravatng circumstances should have been given. This question is discussed in Grier v. Railroad, 286 Mo. 523, 228 S. W. 454, and more recently in Bloomkamp v. Railroad, — Mo. App. —, 236 S. W. 388. [See also Treadway v. Railroad, — Mo. —, 253 S. W. 1037.]

It is our best judgment that the instruction is not erroneous, since there is room for the inference, from the fact that the train was running at the rate of fifty-five miles an hour, on a stormy night, over a public crossing without a headlight and without sounding a warning, that aggravating circumstances were present, or rather this is sufficient to submit such question in the instruction in a suit under this penalty statute. These facts are pleaded and were properly in the case for the consideration of the jury. See Bloomkamp v. Railroad, supra, where it is said at page 390: "It would seem, then, that the aggravating circumstances, if any, surrounding the killing, would necessarily be considered by the jury in cases of this kind and therefore there is no necessity of its being pleaded. At least the effect of the Grier case is that aggravating circumstances need not be pleaded." So it will be seen that it is not necessary to plead aggravation.

Finally, defendant asks a reversal because counsel for plaintiffs in his closing argument referred to the mangled condition of the boy and the tearing out of the entrails of the dead boy in connection with his argument of aggravating circumstances in the case. The court refused to rebuke plaintiffs' counsel, and of this complaint is now made. While the argument may be deemed somewhat objectionable, we do not believe it works a reversal of the judgment. The verdict is for $3500, the boy was seventeen years old when killed, and in view of all the facts and circumstances attendant, we believe that this judgment stands for affirmance. It is so ordered. *Allen, P. J.,* and *Becker, J.,* concur.