IRENE PEDIGO, RESPONDENT, v. ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY, A CORPORATION, APPELLANT.*

St. Louis Court of Appeals.   Opinion filed October 4, 1927.

**1.—Railroads—Negligence—Collision—Death of Automobile Driver—Humanitarian Rule—Evidence—Jury Case.** In an action to recover damages for the wrongful death of plaintiff's husband, resulting from a collision between an automobile he was driving and the locomotive engine of one of defendant's passenger trains, evidence reviewed and **held** sufficient to take the case to the jury under the humanitarian rule.

#### On Motion for Rehearing.

**2.—Instructions—Negligence—Death—Penalty—Instruction for Damages.** In an action for damages for the wrongful death of plaintiff's husband, resulting from a collision between an automobile he was driving and the locomotive engine of one of defendant's passenger trains, an instruction that if

the jury found for plaintiff that they should assess her damages at such a sum as they believed to be a fair and just pecuniary compensation for the damages resulting from the death of her husband, **held** erroneous under section 4217, Revised Statutes 1919, as requiring the jury to assess the plaintiff's damages at such sum as they believed to be a fair and just pecuniary compensation for damages to her occasioned by the death of her husband.

3.—Same—Same—Same—Same—Contributory   Negligence—Humanitarian Rule—Instruction for Damages Prejudicially Erroneous.  In an action for damages against a railroad company for the death of plaintiff's husband caused by his driving an automobile in front of a train, where the evidence, though sufficient to take the case to the jury under the humanitarian rule, showed that the conduct of plaintiff's husband in driving the automobile in front of the train was such as to convict him of contributory negligence as a matter of law, an erroneous instruction on the measure of damages which directed the jury to assess plaintiff's damages at such a sum as would be a fair and just pecuniary compensation for damages to her occasioned by the death of her husband, **held,** under section 4217, Revised Statutes 1919, not merely technically erroneous, but peculiarly prejudicial error.

*Corpus Juris-Cyc. References: Appeal and Error, 4CJ, p. 1174, n. 99; Death, 17CJ, p. 1316, n. 82; p. 1317, n. 88 New; Railroads, 33Cyc, p. 1129, n. 68.

Appeal from the Circuit Court of the City of St. Louis.—Hon. William H. Killoren, Judge.

REVERSED AND REMANDED.

*E. T. Miller, A. P. Stewart* and *C. H. Skinker, Jr.* for appellant.

(1)  The demurrer to plaintiff's evidence should have been sustained.  Pedigo v. St. Louis-San Francisco Ry. Co., 272 S. W. 1029; Aldridge v. Railroad, 256 S. W. 93; Beal v. Railway, 256 S. W. 733; Hardman v. Railway, 274 S. W. 493; Betz v. Railway, 253 S. W. 1089; Rollison v. Railroad, 252 Mo. 525; Dyrcz v. Mo. Pac. R. R. Co., 238 Mo. 33; Stotler v. C. & A. R. R. Co., 204 Mo. 619; Tannehill v. Railway, 279 Mo. 158; Grief v. Lead Co., 274 S. W. 83; Gersman v. Railroad, 229 S. W. 167; McGee v. Railroad, 214 Mo. 530; Monroe v. Railroad, 297 Mo. 633; Alexander v. Railway, 289 Mo. 599; Freie v. Railway, 241 S. W. 671; Keele v. Railroad, 258 Mo. 62; Evans v. Railroad, 289 Mo. 493.  (2)  Instruction numbered 4, given on behalf of plaintiff is erroneous because it is not supported by the evidence.  Authorities cited under point 1.  (3) Instruction numbered 7, given on behalf of plaintiff (Abs., p. 164), is erroneous in that it authorized the jury, in the event they found for plaintiff, to assess "damages" in her favor instead of a "penalty" against defendant.  Treadway v. United Railways Co., 300 Mo. 156.  (4)  The court erred in refusing to give instructions E and F, requested by defendant, withdrawing the charge of negligence

under the last-chance doctrine from the jury, because no case was made under the last-chance doctrine. Authorities cited under point 1.

*Fred Berthold* for respondent.

(1) In passing on defendant's demurrer to the evidence, plaintiff's evidence must be taken as true and plaintiff must be allowed every reasonable inference that may be drawn from the evidence. West v. St. Louis-San Francisco R. Co., 289 S. W. 965 (Mo. App.); Durbin v. Railroad, 275 S. W. 358 (Mo. App.); Williams v. K. C. S. R. Co., 165 S. W. 788 (Mo. Sup.); Pullen v. Hart, 238 S. W. 437 (Mo. Sup.); Stauffer v. Met. St. Ry. Co., 147 S. W. 1032 (Mo. Sup.); Zumwalt v. Chgo. & A. R. Co., 266 S. W. 717 (Mo. Sup.); Maginnis v. Railroad, 268 Mo. 667, 187 S. W. 1165 (Mo. Sup.). (2) The demurrer to plaintiff's evidence was properly overruled. Gould v. Chicago B. & Q. R. Co., 290 S. W. 135 (Mo. Sup.); West v. St. Louis-San Francisco R. R. Co., 289 S. W. 965, 967 (Mo. App.); Banks v. Morris & Co., 257 S. W. 484-485 (Mo. Sup. en banc); Zumwalt v. Chicago & A. R. Co., 266 S. W. 717 (Mo. Sup.); Maginnis v. Railroad, 268 Mo. 667, 187 S. W. 1165 (Mo. Sup.); Goeben v. Quincy O. & K. C. R. Co., 226 S. W. 631; State ex rel. Q. O. & K. C. R. Co. v. Trimble et al., Judges, 254 S. W. 846; Hoff v. Wabash Ry. Co., 254 S. W. 874; Moore v. St. L. San Francisco Ry., 283 S. W. 732 (Mo. App.); Paul v. St. L.-San Francisco Ry., 275 S. W. 575 (Mo. App.); Cowherd v. Mo. Pac. R. R. Co., 268 S. W. 107 (Mo. App.); Chapman v. Mo. Pac. R. R. Co., 269 S. W. 68 (Mo. App.); Shepard v. St. Louis-San Francisco R. R. Co., 280 S. W. 1058 (Mo. App.); Smith v. Chgo. G. W. R. Co., 282 S. W. 62 (Mo. App.). (3) Contributory negligence has no place in case under humanitarian rule. Trussell v. Waight, 285 S. W. 114. (4) Duty to look applies not only to persons approaching a railroad crossing, but to the engineer and fireman in charge of an engine when it is their duty to look out so as not to injure persons when approaching the crossing. Logan v. Chicago, B. & Q. R. Co., 254 S. W. 705 (Mo. Sup.); Dutcher v. Railroad, 241 Mo. 165, 145 S. W. 71 (Mo. Sup.); Felver v. Railroad, 216 Mo. 213, 115 S. W. 980 (Mo. Sup.); Moore v. St. Louis-San Francisco Ry. Co., 267 S. W. 945 (Mo. App.). (5) (a) Refusal of instruction not referring to negligence under humanitarian rule held proper where case was limited to humanitarian rule. Gould v. Chicago, B. & Q. R. Co., 290 S. W. 135 (Mo. Sup.). (b) Refusal of instruction which is substantial repetition of others given is not error. Trepp v. State Nat'l Bank, 289 S. W. 540 (Mo. Sup.); Brann v. Hydraulic Press Brick Co., 288 S. W. 941 (Mo. App.), (6) The giving of plaintiff's instruction No. 7, while not correct in every respect, is not reversible error. Powell v. Union Pac. R. Co., 164 S.

W. 638,..639 (Mo. Sup. Ct.) ; Roberts v. Kansas City Railways Co.,
228 S. W. 904 and 905 (Mo. App.) ; State ex rel. Wabash Railway
Co. et al. v. Bland et al., Judges, 281 S. W. 690 (Mo. Sup. Ct.) ;
McDaniel v. Davis (Mo. Sup.), 266 S. W. 710.

SUTTON, C.—This is an action to recover damages for the wrong-
ful death of plaintiff's husband, resulting from a collision between
a Dodge touring car he was driving and the locomotive engine of one
of defendant's passenger trains, at the intersection of Themis and
Water streets, in the city of Cape Girardeau. The collision occurred
shortly after noon on November 1, 1922. This action was commenced
on January 9, 1923. A trial was had, with a jury, which resulted
in a verdict and judgment in favor of plaintiff for the sum of six
thousand dollars. The court granted defendant a new trial on the
grounds (1) that the court had erred in refusing to give an instruc-
tion in the nature of a demurrer to the evidence requested by defend-
ant, and (2) that the verdict was against the weight of the evidence.
From the order granting a new trial the plaintiff appealed to this
court. Upon that appeal the order of the court granting a new trial
was affirmed by this court on the grounds (1) that the decedent's
contributory negligence defeated his recovery for any primary neg-
ligence on the part of the defendant, and (2) that there was no evi-
dence sufficient to support the verdict under the humanitarian rule.
After the cause went back to the court below the plaintiff amended
her petition. Upon a retrial of the cause, with a jury, the defend-
ant again requested an instruction in the nature of a demurrer to
the evidence, which the court refused to give. There was a verdict
and judgment in favor of plaintiff for the sum of six thousand dollars,
and the defendant appeals.

Upon this appeal the defendant assigns reversible error for the
refusal of its instruction in the nature of a demurrer to the evidence.

The petition as amended charges that on or about November 1,
1922, at about 12:30 P. M., an automobile which plaintiff's husband
was driving eastwardly on Themis street at the intersection of
Themis and Water streets was struck by the locomotive engine of
one of defendant's trains, whereby he sustained injuries from which
he died, and that his death directly resulted from the negligence
of defendant, as follows, to-wit : First, that defendant's agents and
servants in charge of and operating said engine and train, negli-
gently operated its said engine and train at a greater rate of
speed than eight miles per hour, in violation of an ordinance of
the city of Cape Girardeau ; second, that defendant's agents and
servants in charge of and operating said engine and train, neg-
ligently failed to sound a bell at a distance of at least eighty rods
from Themis street and to continue sounding a bell at intervals until

said engine and train had crossed over Themis street; and, third, that defendant's agents and servants in charge of and operating said engine and train saw or by the exercise of ordinary care could have seen plaintiff's husband in a position of imminent peril in time thereafter by the exercise of ordinary care, with the brakes and appliances at hand, with safety to the crew and passengers, to have diminished the speed of said engine  and train, or to have stopped said engine and train, or to have sounded a signal warning of the approach of said engine and train, and thereby avoided striking said automobile.

The facts as disclosed by the record upon the present appeal are in several respects materially different from the facts as disclosed by the record upon the former appeal.

The facts as disclosed by the present record are substantially as follows:

Water street runs north and south along the river front next to the levee on the east.  Themis street runs east and west, and intersects Water street from the west. · Broadway, which is north of Themis street runs east and west, and intersects Water street from the west.  Independence street, which is south of Themis street, runs east and west, and intersects Water street from the west.  The main track of defendant's railroad runs north and south over and along the east side of Water street.  There is an old passenger depot located north of Broadway on the east side of the main track.  Looking southward there is a left curve in the track just north of the old depot.  Broadway, Themis and Independence streets terminate at Water street.  The distance from Broadway to Themis street is 345 feet.  The width of Broadway from building line to building line is about fifty-six feet.  The sidewalks on Broadway are about ten feet wide.  The width of Broadway from curb to curb is about thirty-five feet.  The distance from the north building line of Broadway to the old passenger depot is 150 feet.  The width of Themis street from building line to building line is fifty-six feet.  The sidewalks on Themis street are about ten feet wide.  The width of Themis street from curb to curb is thirty-five feet.  The distance from· Themis street to the old depot is 550 feet.  The distance from the building line on the west side of Water street to the west rail of the main track of defendant's railroad is about thirty-nine feet.  The distance from the curb on the west side of Water street to the west rail of the main track is twenty-eight feet.  The width of the sidewalk on the west side of Water street is about eleven feet.  There is about a one per cent downgrade in the track from the old depot to Themis street.  There are no obstructions to the view between the old depot and the intersection of Themis and Water streets.  Though Broadway,

Themis and Independence streets terminate at Water street, they were at the time of the accident and for a long time prior thereto much traveled by vehicles going east to the levee on the river front, and in so traveling the vehicles passed over the defendant's railroad tracks as though the streets extended east over the levee. In fact, the whole levee was much traveled by vehicles. Decedent was engaged in the passenger transfer business. At the time of the accident the Steamer Bald Eagle was landing or had just landed at the levee. Decedent was driving his Dodge touring car east on Themis street and across the intersection of Themis and Water streets. As the automobile crossed the main track of defendant's railroad on Water street, it was struck by the engine of a south-bound passenger train. The automobile was shoved or carried on the pilot of the engine a distance variously estimated by the witnesses at 125 to 160 feet before the train stopped.

A number of witnesses, including the engineer in charge of the engine which collided with decedent's automobile, were produced and testified, on behalf of plaintiff. The fireman did not testify. In fact, no evidence whatever was produced on behalf of defendant.

O. E. Maybrey testified: "I saw the automobile come down Themis street and then I saw the train coming down across Broadway. The front wheels of the automobile had cleared both rails of the track and the rear wheels were between the rails of the track when the engine struck the automobile. When the front wheels of the automobile were at the west rail of the track, the engine was about half way down the block between Broadway and Themis street. I could not tell exactly. The engine struck the automobile about half way from the center of the automobile to the rear. I did not hear any bell rung or whistle sounded. The automobile wasn't going very fast as it went upon the track. From the time the automobile emerged into Water street until the time of the collision, it was going east. It did not make any turns either to the north or to the south. It went straight ahead. When I saw the automobile coming out of Themis street the train was coming down from Broadway somewhere, just past Broadway, coming down, the front end of the train had just passed Broadway."

Birdie Randolph testified: "I was walking north on the west side of Water street. I saw the automobile coming down Themis street. When I first saw it, it was just passing the building line on the west side of Water street. It was going east towards the river. From that time on until the collision occurred, the automobile continued traveling east—always straight east. It was moving five to six miles per hour. I saw the passenger train approaching from the north. It was at the old depot when I first saw it.

There was no bell rung or whistle sounded on the engine. The engine struck the back part of the automobile. The front wheels of the automobile were over on the east side of the track and the rear wheels just past the middle of the track. It was a clear day. The streets were dry. I think the rails were dry. When I first saw the train, the engine was at the old depot, and the automobile was coming in on Water street, and when the automobile was about ten feet from the track the train was down at about Broadway. The automobile was moving real slow.''

Several witnesses testified that the train was moving at about the speed of twenty-five miles per hour as it approached the scene of the accident.

H. R. Davis, the engineer, testified that the train was moving about twenty miles per hour as it passed the old depot, and that it was going about the same rate of speed when it got down to Broadway; that he shut off steam there, and the speed was thereby reduced to sixteen or seventeen miles per hour; that the train was moving at about fifteen miles per hour when the engine was about 100 feet north of the point of collision, and it was moving at the same rate of speed when the collision occurred.

R. T. Bosswell, an employee of defendant, testified that he was standing about 300 feet north of Themis street and that when the train passed him it was running at a speed of fifteen to eighteen miles per hour. He also testified that the automobile as it approached the track was moving at a speed of six to ten miles per hour.

The engineer further testified that there were six coaches on the train his engine was pulling, one baggage coach, one mail coach, one private coach, and three passenger coaches; that the train was equipped with air brakes; that each one of the coaches was equipped with its own braking power; that each coach took care of itself in stopping, that is, it stopped just the same as if there were only one or two coaches; that the engine was also equipped with its own braking power; that the reservoir of the engine carried air pressure of ninety pounds to the square inch, and that each coach carried air pressure of seventy pounds to the square inch; that the full force of this pressure was utilized when the brakes were applied in emergency; that the train running at a speed of twenty-five miles per hour could, by application of the brakes in emergency, with safety to the crew and the passengers, have been stopped in a distance of 225 feet; running at a speed of twenty miles per hour, in a distance of 200 feet; running at a speed of seventeen miles per hour, in a distance of 175 feet; running at a speed of sixteen miles per hour, in a distance of 170 feet; and running at a speed of fifteen miles per hour, in a distance of

165 feet; that an interval of from three to five seconds would elapse after the application of the brakes in emergency before the brakes would take hold so as to affect the movement of the train, and that the distances given by him in which the train could have been stopped were the distances the train would travel after the brakes took hold; that as he approached the point of collision he was seated on the right-hand side of the engine; that when he was 150 feet north of Themis street he had an unobstructed view of the intersection of Themis and Water streets from the track to a point fifty feet west of Water street; that when he first saw the decedent's automobile it was about fifteen feet from the west rail, going straight towards the track, at a speed of about ten miles per hour, and the head of the engine was about 100 feet from the point of collision; that he then realized that the automobile was going upon the track and immediately applied the brakes in emergency and sounded several sharp blasts of the whistle, but was unable to avoid the collision; that the fireman was ringing the bell continuously as the engine approached the point of collision.

A. J. Potter, an experienced locomotive engineer and trainman, testified that the train running at twenty-five miles per hour could have been stopped with an ordinary service application of the brakes, with safety to the crew and passengers, in a distance of 130 feet, and with an emergency application in a distance of 100 feet; running at twenty miles per hour, with a service application in a distance of ninety feet, and with an emergency application in a distance of seventy-seven feet; running at a speed of seventeen miles per hour, with a service application in a distance of seventy-five feet, and with an emergency application in a distance of fifty-seven feet; running at fifteen miles per hour, with a service application in a distance of fifty feet, and with an emergency application in a distance of forty-five feet; that the operation of applying the brakes in emergency was instantaneous; that in a service application there would be a slight interval before the brakes would take hold, but that in an emergency application the brakes would take hold of the wheels of the engine and coaches instantaneously.

It is manifest, without discussion, that the facts as disclosed by the present record were sufficient to take the case to the jury under the humanitarian rule.

The court committed reversible error, however, in the giving of plaintiff's instruction No. 7, of which defendant complains, telling the jury that if they found for plaintiff they should assess her damages at such sum as they believed to be a fair and just pecuniary compensation for damages to her occasioned by the death

of her husband. [Treadway v. United Railways Co., 300 Mo. 156, 253 S. W. 1037; McDaniel v. Davis (Mo.), 266 S. W. 710.]

The Commissioner recommends that the judgment of the circuit court be reversed and the cause remanded.

PER CURIAM:—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly reversed and the cause remanded. *Daues, P. J.,* and *Becker* and *Nipper, JJ.,* concur.

### ON MOTION FOR REHEARING.

(Opinion filed October 25, 1927.)

SUTTON, C.—On motion for rehearing plaintiff insists that the instruction held reversibly erroneous in the opinion is merely technically erroneous and harmless. Plaintiff relies on Ward v. Missouri Pacific Ry. Co. (Mo.), 277 S. W. 908, l. c. 912, State ex rel. Wabash Ry. Co. v. Bland (Mo.), 281 S. W. 690, Toeneboehn v. St. Louis-San Francisco Ry. Co. (Mo. Sup.), 298 S. W. 795, not yet reported, and McDaniel v. Davis (Mo. Sup.), 266 S. W. 710.

In Treadway v. United Railways Co., 300 Mo. 156, 253 S. W. 1037, our Supreme Court, in discussing instruction No. 2 there under review, said:

"The instruction set out above told the jury in substance that if they found the issues for the plaintiff they should assess his damages as such sum as would compenate him for the injury resulting to him by reason of his father's death. The instruction was clearly erroneous. In the first place, it involved a fundamental misconception of the considerations that should have governed the jury in determining the amount of the recovery, in that it directed them to assess *damages in favor of the plaintiff;* whereas, the duty enjoined upon them by the statute was to assess a *penalty against the defendant.* Plaintiff's cause of action was not for *damages,* but for *the penalty* accruing under the statute.

"In the second place the instruction told the jury in effect that they must assess plaintiff's recovery at a sum that would compensate him for his pecuniary loss; whereas, they should have been left free to assess it at a smaller amount had they in the exercise of their discretion seen fit to do so. Plaintiff's pecuniary loss was in no sense the measure of his recovery. While his award under the facts of this case could reasonably have equaled or exceeded the amount that would compensate him for his pecuuiary loss, it could just as reasonably have been fixed at a lesser sum, in the discretion of the jury. We held in Grier v. Railroad, supra, that the jury in assessing the

penalty against the defendant for wrongful death under section 4217 may properly take into consideration the pecuniary injury inflicted upon plaintiff. We so hold now. But such injury is but one fact to be considered with others, and the importance to be given it as a factor in determining the amount of the penalty should be left to the unfettered discretion of the jury.

"For the reasons indicated, the giving of plaintiff's instruction No. 2 was reversible error."

The instruction under review in the present case is as follows:

"The court instructs the jury that if under the other instructions given to you in this case you find the issues in favor of plaintiff, then you should assess her damages, if any, at such sum, if any, as you believe and find from the evidence to be a fair and just pecuniary compensation, only for damages, if any, to her, occasioned by the death of William Lee Pedigo, not exceeding the sum of ten thousand dollars."

This instruction has the same vice—more strongly put—as the instruction condemned in the Treadway case. It, not merely in substance and effect but in express terms, tells the jury that they must assess the plaintiff's damages at such sum as they believe to be a fair and just pecuniary compensation for damages to her occasioned by the death of her husband, and that, too, without discretion to do otherwise. If the pronouncement in the Treadway case is still the law of this State, clearly the instruction in the present case is reversibly erroneous.

The cases relied on by plaintiff do not overrule or qualify what was pronounced as the law in the Treadway case, but distinguish and reaffirm it.

In the McDaniel case the instruction under review is as follows:

"If the jury find for the plaintiffs, they will assess the damages not less than $2000 or more than $10,000 at the discretion of the jury."

The court in that case said:

"The point urged is that the instruction told the jury they might assess damages, whereas they should have been told to assess a penalty. The instruction here does not, as in the Treadway case, submit the question of damages with the specific element of compensation for pecuniary loss, and compensation for injury resulting from the death of the person deceased. In this case the question of amount, within the statutory limits, was left to the discretion of the jury, without directing their attention to the element of compensation for injury or loss. . . . As has been pointed out, the instruction left the amount (within the statutory limits) to the discretion of the jury, without more direction. Under the holding in the Grier Case, 286 Mo. loc. cit. 540, 228 S. W. 454, and in the Treadway Case, 300

Mo. 156, 253 S. W. loc. cit. 1042, 1043 a jury told to assess a penalty (within the limits prescribed by the statute) in their discretion, and without other direction, 'would inevitably and necessarily' take into consideration 'the acts or omissions constituting negligence, or evidencing criminal intent, with their attendant circumstances,' and also in a case involving pecuniary loss, might 'properly take into consideration the pecuniary injury inflicted upon the plaintiff.' Referring to the foregoing, and closing the opinion in the Treadway case this court said: 'But such injury is but one fact to be considered with others, and the importance to be given it as a factor in determining the amount of the penalty should be left to the unfettered discretion of the jury.' This was said in view of the fact that the instruction there condemned, in effect told the jury, 'they must assess plaintiff's recovery at a sum that would compensate him for his pecuniary loss.' In the instant case the jury was left, under the instruction given, to its discretion, unfettered, except by the statutory limits, and except that the amount they might assess was by the instruction characterized as damages, and not as a penalty. Since, if the word 'penalty' had been used, the jury, in determining the amount defendant should pay, could properly have considered the circumstances attending the act or omission causing the injury, and also the pecuniary loss resulting to plaintiffs, it is not perceivable how the defendant was injuriously affected by the use of the word 'damages,' instead of the word 'penalty,' as descriptive of the nature or legal character of the action, and of the amount or sum of money which it might be found that the defendant should pay, and the plaintiff should recover; nor, is it conceivable that a jury composed of laymen would understand the instruction as other than a direction to them, in their discretion, and under the facts before them, to fix within defined limits, the amount which defendant should pay and the plaintiffs recover.''

In State ex rel. Wabash Ry. Co. v. Bland, the court having under review an instruction similar to the instruction under review in the McDaniel case, said:

''It is strenuously insisted by relators that, under the decisions in Treadway v. Railways, 253 S. W. 1037, 300 Mo. 156, and Grier v. Railroad, 228 S. W. 454, 286 Mo. 523, the instruction was erroneous. In this they are right; it was technically erroneous. But in McDaniel v. Davis (Mo. Sup.), 266 S. W. 710, it was held that the giving of such an instruction, the facts of the case and the wording of the particular instruction considered, did not constitute reversible, that is, prejudicial error. The same situation possibly exists with reference to the case under review. But it is remarkably strange that the word 'damages' instead of 'penalty' continues to be used in such instructions, in the face of the statute and repeated rulings of this court. The persistence in that practice illustrates anew the laggard

conservatism of the bench and bar. When once they have gotten into a particular rut and followed it for any considerable length of time, nothing short of an upheaval of cataclysmic proportions can get them out of it. Notwithstanding, we take this occasion to point out that the use of the word 'damages' in an instruction upon the measure of recovery under the statute in every instance invites the closest scrutiny and a possible reversal.''

The instruction under review in the Ward case advised the jury as follows:

''If you find for the plaintiff, you should allow her such sum not less than $2000 nor more than $10,000 in the discretion of the jury, and in determining the amount you will allow her, you may take into consideration the pecuniary loss, if any, occasioned to plaintiff by the death of her husband.''

In disposing of that case the court said:

''It is argued that this suit was brought under section 4217, Revised Statutes 1919, the penal statute, and therefore the recovery must be a penalty and not compensatory; the amount awarded should not be measured by the pecuniary loss to the plaintiff. . . .

''The case of Treadway v. United Railways Co., 300 Mo. 156, 253 S. W. 1037, is cited by appellant as in point to show that part of the instruction objected to is erroneous. The instruction in that case (300 Mo. 176, 253 S. W. loc. cit. 1042) contains this:

'' 'The court instructs the jury, if, under the evidence and other instructions in this case, you find your verdict for plaintiff, then you will assess his damages at any sum, not exceeding $10,000, that you may deem fair and just, having reference to the necessary injury, if any, resulting to the the plaintiff, . . . and you may take into consideration in estimating said damages, if any, the loss of support,' etc.

''Judge RAGLAND, writing that opinion and having in mind the Grier case, held that instruction was erroneous because it directed the jury to assess damages in favor of the plaintiff, whereas it was their duty to assess a penalty against the defendant; and the objection was made that it told the jury they 'must assess plaintiff's recovery' at a sum which would compensate plaintiff for his pecuniary loss. Do those objections apply here?

''The jury in this case, instead of assessing the damages to plaintiff, were authorized to allow her such sum not exceeding, etc., 'in the discretion of the jury.' They were not directed to assess her damages. Any verdict they could render, assessing a penalty, would have to be allowed her. Hence, when they were directed if they found for her to allow her a sum within the statutory limit in their discretion, they were strictly within the statute and within the ruling in the Grier case.

"Appellant apparently concedes that facts showing the pecuniary loss to the plaintiff were admissible to assist the jury in determining the amount of penalty which they would assess.  It claims that the instruction authorized the jury to compensate the plaintiff for damages sustained.  Grammatically, it does not say so.  If the defendant thought the instruction was likely to mislead the jury in that respect, it should have asked an instruction more clearly defining the manner in which they should consider evidence of that character, limiting their consideration of it to the infliction of the penalty.  The court could very properly have given an instruction telling the jury they were not authorized to assess plaintiff's damages as a compensation for the injury so suffered, but that they could only assess a penalty against the defendant, and they should consider only the pecuniary loss to her for the purpose of determining the amount of the penalty. The defendant failed to ask any instruction further qualifying that matter, and therefore is not in position to complain of the instruction.''

The court, discussing the instruction under review in the Toenc-boehn case, said:

''Objection is made to plaintiff's instruction 6 on the amount of the recovery.  It is said that the instruction does not direct the jury to assess a penalty against the defendant in the event they found for plaintiff, but proceeds upon the theory of damages, and authorizes the jury in determining the amount of their award, to consider pecuniary loss.  The instruction does not use the word 'penalty,' nor does it use the word 'damages.'  The instruction complained of is a literal copy of the instruction given in Ward v. Mo. Pac. Ry., 277 S. W. and there set out, l. c. page 912.  The giving of that instruction was held not reversible error upon hearing of that case, en banc; and this point is also ruled against defendant.''

It is obvious that these cases do not manifest any disposition on the part of our Supreme Court to overturn what was put down as the law in the Treadway case.

The vice of the instruction in the Treadway case, as pointed out by the court, consisted not merely in that it directed the jury to assess damages in favor of plaintiff, but in that it both directed the jury to assess damages in favor of plaintiff and went further and advised the jury that in estimating the damages they might take into consideration the pecuniary loss resulting to plaintiff, so that the instruction in substance and effect directed the jury to assess the plaintiff's recovery at a sum that would compensate him for his pecuniary loss.  None of the instructions ruled on in the cases relied on by plaintiff is possessed of this vice.  The instruction in the present case does not merely direct the jury to assess damages in favor of plaintiff and advise them that they may take into consideration the pecuniary loss resulting to plaintiff, but it in distinct and positive

terms directs the jury to assess the plaintiff's damages at such sum as will be a fair and just pecuniary compensation for damages to her occasioned by the death of her husband. The instruction is not merely technically erroneous, but, on the contrary, is peculiarly prejudicial under the facts of this case. The conduct of plaintiff's husband was such as to convict him of contributory negligence as a matter of law. The only negligence of defendant shown upon which liability might be predicated was its negligence in the violation of the humanitarian rule, and upon this issue the case was a close one. Though we entertain no doubt that the evidence was sufficient to take the case to the jury under the humanitarian rule, the jury might well have found that defendant's negligence was such as to render it liable under the humanitarian rule, but that it was not such as to warrant the infliction of a heavy penalty, and it may be that the jury would have thought that the penalty which the evidence warranted was much less than the amount which they thought would be a fair and just pecuniary compensation to plaintiff for damages to her occasioned by the death of her husband, and that they would have so found by their verdict, if they had been allowed to do so. Nor can it be said that the instruction is couched in general or indefinite terms, or is lacking in clarity, so that it might have been cured by a further instruction if defendant had seen fit to request one. If the defendant had requested and the court had given an instruction telling the jury that they were not authorized to assess plaintiff's damages as a compensation for the injury suffered, but that they could only assess a penalty against the defendant, and that they should only consider pecuniary loss to her for the purpose of determining the amount of the penalty, this would not have cured, but would have been in diametrical conflict with, the plaintiff's instruction, which directed the jury to assess plaintiff's damages at such sum as would be a fair and just pecuniary compensation for damages to her occasioned by the death of her husband.

The Treadway case is necessarily controlling here, and the Commissioner recommends that the motion for rehearing be overruled.

PER CURIAM:—The foregoing opinion of Sutton, C., is adopted as the opinion of the court. The plaintiff's motion for a rehearing is accordingly overruled. *Daues, P. J.*, and *Becker* and *Nipper, JJ.*, concur.