JEFFERSON H. COOPER v. KANSAS CITY PUBLIC SERVICE COMPANY, a Corporation, Appellant.—No. 40081.—202 S. W. (2d) 42.

Court en Banc, May 12, 1947.

*Charles L. Carr, William A. Kitchen, Alvin C. Trippe, Hale Houts* and *Hogsett, Trippe, Depping & Houts* for appellant.

*Maurice J. O'Sullivan* and *John G. Killiger, Jr.,* for respondent.

484

██ HYDE, J.—This is an action for damages for the wrongful death of plaintiff's wife, when a passenger on defendant's bus. Plaintiff obtained a verdict for $10,000.00 and defendant has appealed from the judgment entered.

██ The case was submitted on plaintiff's Instruction No. 1 requiring a finding of the following facts concerning the occurrence: "That on January 13th, 1945, said bus mentioned in evidence stopped to discharge passengers at 15th and Grand Avenue, and that plaintiff's wife followed other passengers to the front door on the right-hand side to get off of said bus in the usual and ordinary way and was exercising ██ ordinary care for her own safety, and while she was so doing that the front door of said bus was closed on the sleeve or other part of her outer coat and said bus was started to go north on Grand Avenue before she could get away therefrom and pulled her along the side of said bus while it was moving and that she was thereby knocked under and run over by the right front wheel of said bus."

Defendant contends that the court erred in overruling its motion for a directed verdict (and also in giving Instruction No. 1) on the ground that there was no substantial evidence of the facts submitted. It argues that the testimony upon which plaintiff relies to establish these facts was contrary to the physical facts and inherently impossible.

Mrs. Cooper was injured between 6:30 and 6:45 A. M. It was a dark foggy morning. There were lights on the bus and the street lights were lighted. She was on her way to work at a war plant, and was a passenger on defendant's trolley bus west bound on 15th street. She got off at the stop for Grand Avenue, which was at the northeast corner of the intersection, where it was necessary for her to go west across Grand Avenue to transfer to another bus. The bus from which she alighted was to turn north onto Grand Avenue. It was defendant's theory (and it had testimony to so show) that she got off the bus safely, walked a few feet west to the corner, started across Grand Avenue with the green traffic light and walked into the front of the bus as it came around the corner. She was the last passenger

to get off the bus, leaving by the front door; and there was testimony that the driver "did close the doors very fast and started right up", and that passengers on the bus heard a cry or scream almost immediately after the bus started. The bus driver said that after he closed the doors he released the brakes and coasted to the corner where he waited for the traffic light to change, and that he heard a scream soon after he put on the power and started around the corner onto Grand Avenue. He said that he stopped the bus immediately with the front end in the pedestrian lane (east and west) across Grand Avenue. The front wheel of the bus ran against Mrs. Cooper crushing her pelvis. The bus was moved back enough to release her and a picture taken at the scene by the police shows a large bloody spot on the top of the tire. The right sleeve of her coat was completely torn off. The evidence as to the speed of the bus was that it was moving slowly, about three to five miles per hour.

The only person, who said she saw Mrs. Cooper's sleeve caught in the door, was a colored woman, Mrs. Laura Wilson, who was also a passenger on the bus but got off before Mrs. Cooper did. Mrs. Wilson said that she walked west a few feet and then went north on the east side of Grand Avenue toward the bus stop where she was going to transfer to another bus going north. She turned to look south for this bus and saw the bus which she had left turning north on Grand Avenue. She saw Mrs. Cooper at the side of the bus with her right coat sleeve, between the wrist and elbow, caught in the back part of the front door. She said it was caught between the body of the bus and the back of the door where the hinges were. She said Mrs. Cooper was "running backward, keeping up with the bus and was knocking on the window with her purse," which was in her left hand, saying "stop the bus." Mrs. Wilson said she "ran out there and knocked on the window" and said "there is a lady caught in the bus," but at that time the operator "speeded the bus up and that pulled Mrs. Cooper off of her feet and threw her under the bus."

Pictures in evidence show that the bus had two front doors, one on each side of the entrance, which came together in the center of the entrance when closed. Each of these doors had two panels which folded together when opened. When the doors were opened, these panels folded out and extended beyond the body of the bus. The back one of these two doors was fitted flush with the body of the bus and appeared to have hinges there, on the outside, which protruded beyond the body of the bus. Defendant says that these physical facts show that it would have been impossible for Mrs. Cooper's sleeve to have been caught in the hinges or the crack between the back of the door and the body of the ▮▮▮ bus. They argue that the rear front door was folded out from the body of the bus, in front of the place where it was hinged to the body, so that this folded door was between Mrs. Cooper and the place where Mrs. Wilson testified the sleeve of her

coat was caught. They also say that the action of the closing doors would be to push her away from this place. However, plaintiff points out that it would have been possible for Mrs. Cooper in alighting from this doorway to swing her right arm back so that her arm would be completely behind the open folded door and thus allow her sleeve to come in contact with one of the rear hinges of the door at the time it was being closed. Considering the pictures in evidence, we cannot hold that this explanation is impossible; and, in view of the positive testimony (believed by the jury) that the sleeve of her coat was caught in this place, we, therefore, hold that the court properly submitted the case to the jury and that there was evidence to support Instruction No. 1.

Defendant also assigns error in giving plaintiff's Instruction No. 2, which was as follows: "The court instructs you that if your verdict is for the plaintiff, then in assessing his damages, if any, you may consider his age and pecuniary loss, if any, directly caused by the death of his wife, and you may allow him such sum not exceeding $10,000.00 as you deem fair and just with reference to injury to him, if any, necessarily resulting from such death."

Defendant says that plaintiff had a case only under the penalty section (Sec. 3652, R. S. 1939, Mo. Stat. Ann.) of the wrongful death statutes, but that this instruction gave the jury the measure of damages for recovery under the compensatory sections (Sec's. 3653, 3654, R. S. 1939, Mo. Stat. Ann.) instead of the measure of damages provided by the penalty section, citing Treadway v. United Railways Co., 300 Mo. 156, 253 S. W. 1037; Beaber v. Kurn, 231 Mo. App. 22, 91 S. W. (2d) 70; Pedigo v. St. Louis-San Francisco Ry., 220 Mo. App. 1175, 299 S. W. 110; Ervin v. St. Louis, I. M. & S. Ry., 158 Mo. App. 1, 139 S. W. 498. Section 3652 provides for recovery "as a penalty" of "the sum of not less than two thousand dollars, and not exceeding ten thousand dollars, in the discretion of the jury." For recovery under the compensatory section, the jury is authorized by Section 3654, to give "such damages, not exceeding ten thousand dollars, as they may deem fair and just, with reference to the necessary injury resulting from such death, to the surviving parties who may be entitled to sue, and also having regard for the mitigating and aggravating circumstances." (See 1945 Amendment, H. B. 389.)

In the Treadway case, this court held the instruction on damages erroneous, because it said that case was brought under the penalty section, and "the instruction told the jury in effect that they must assess plaintiff's recovery at a sum that would compensate him for his pecuniary loss, whereas, they should have been left free to assess it at a smaller amount had they in the exercise of their discretion seen fit to do so." This court further said: "Plaintiff's pecuniary loss was in no sense the measure of his recovery. While his award under the facts of this case could reasonably have equaled or ex-

ceeded the amount that would compensate him for his pecuniary loss, it could just as reasonably have been fixed at a lesser sum, in the discretion of the jury.'' Thus the opinion, while recognizing that the jury might ''properly take into consideration the pecuniary injury inflicted upon plaintiff,'' nevertheless held that the jury could dis-regard it, in actions under the penalty section, saying: ''Such injury is but one fact to be considered with others, and the importance to be given it as a factor in determining the amount of the penalty should be left to the unfettered discretion of the jury.'' Therefore, the plaintiff's damage instruction was held to be reversible error be-cause it required the jury to assess damages on the basis of ''the necessary injury, if any, resulting to the plaintiff by reason of the death of his father.'' It is argued that the instruction in this case does not go so far because it says ''may'', instead of ''will'' used in the Treadway instruction. However, we think it better to discuss the matter on a broader ground.

We do not think that it should be held that plaintiff herein brought and submitted ▪ his case under the penalty section, 3652. His pe-tition says nothing about penalty and merely alleges damages in the sum of ten thousand dollars. Instruction No. 2 authorizes considera-tion of the measure of damages provided only by the compensatory sections, 3653-3654. It is true, as pointed out by defendant that In-struction No. 1 submitted facts showing a common carrier and passen-ger relation at the time of the injury (and the petition alleged such facts) and that it imposed the degree of care required by such rela-tion. Therefore, this was clearly a case which could have been brought and submitted under the penalty section. Nevertheless, on principle, we see no good reason why plaintiff could not elect to bring it and submit it under the compensatory section. We are aware of the holding in Casey v. St. Louis Transit Co., 205 Mo. 721, 103 S. W. 1146, to the contrary. At that time, however, the penalty section provided no measure of damages at all but instead required the payment of exactly the same penalty ($5000.00) in all cases within its terms (Sec. 2864, R. S. 1899); and that was the basis of the ruling in the Casey case to the effect that suit could not be brought for less either under the penalty section or the compensatory section, then Section 2865, R. S. 1899. There is less force to the reasons then given for that ruling since the amendment of 1905 (Laws 1905, p. 135) giving the jury discretion to fix the amount of recovery under the penalty sec-tion between $2000.00 and $10,000.00, which we have held permits them to take into consideration plaintiff's pecuniary injury. [Tread-way v. United Railways Co., supra; Grier v. Kansas City, Clay County & St. Joseph Ry. Co., 286 Mo. 523, 228 S. W. 454.] The Grier case says that in fixing the penalty the jury ''should take into consideration both the facts constituting the negligence or wrongful act, with the attending mitigating and aggravating circumstances, and those show-

ing the extent of the pecuniary loss inflicted." The Treadway case affirmed this and only held that the jury in its discretion might disregard these factors in a penalty case.

Furthermore, our compensatory section (3653) is broad enough to cover every conceivable kind of either negligent or intentional wrongful death. ("Death . . . caused by a wrongful act, neglect or default of another . . . such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof.") It is an almost verbatim copy of Section 1 of Lord Campbell's Act, St. 9 to 10 Vict. C. 93, enacted by the English Parliament in 1846, the first wrongful death statute, after which most American statutes have been patterned. [Tiffany, Death by Wrongful Act, Section 19; 25 C. J. S. 1076, Sec. 15; 16 Am. Jur. 39, Sec. 49, p. 52, Sec. 68.] Many states have only this provision [Tiffany, Analytical Table of Statutes]; and certainly standing alone it would have to be construed as covering negligence of a common carrier. There is nothing in Section 3652, as it is now written, which requires it to be construed as the exclusive remedy for the kind of negligence designated in it.

Moreover, at the time of Casey v. St. Louis Transit Co., supra, the wrongful death act was being strictly construed because of being in derogation of the common law. [See Jackson v. St. L., I. M. & S. Ry. Co., 87 Mo. 422, 56 Am. Rep. 460; Strottman v. St. L., I. M. & S. Ry. Co., 211 Mo. 227, 109 S. W. 769; Clark v. K. C., St. L. & C. Ry. Co., 219 Mo. 524, 118 S. W. 40.] Our Legislature abolished this rule of construction in 1917 (Laws 1917, p. 324); and, by Section 645, R. S. 1939, Mo. Stat. Ann., it is now provided that "no act of the General Assembly or law of this state shall be . . . limited in its scope or effect by the courts of this state, for the reason that the same may be in derogation of . . . common law . . . ; but all such acts of the General Assembly, or laws, shall be liberally construed, so as to effectuate the true intent and meaning thereof." Certainly, when a person is killed by the negligence of the operator of a bus, to hold that his beneficiaries cannot sue for compensatory damages under Sections 3653-3654 would not be a liberal construction of those statutes. When there is nothing in any section of the wrongful death act so providing, we think it would be a narrow, strict, and technical construction to say that Section 3653 only covers cases not covered by Section 3652 so that the beneficiaries are required to sue for the penalty and cannot elect to use for compensatory damages instead. The persons who may sue, are the same in either case; and their rights to sue in any case are governed by the provisions of Sec. 3562. [Cummins v. Kansas City Public Service Co., 334 Mo. 672, 66 S. W. (2d) 920.] We, therefore, hold that beneficiaries may elect either remedy and that it was not error to give Instruction No. 2 authorizing compensatory damages.

The judgment is affirmed. All concur.